```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

TYLER YOUNG, et al.,          :
                              :
        Plaintiffs,           :    NO:  1:11-CV-00853
                              :
    v.                        :
                              :    **OPINION AND ORDER**
SCOTT OWENS, et al.,          :
                              :
        Defendants.           :

This matter is before the Court on the cross motions of the parties: Plaintiffs' Motion for Summary Judgment (doc. 25), Defendants' Response in Opposition (doc. 32), and Plaintiffs' Reply (doc. 34); Defendants' Motion for Summary Judgment (doc. 26), Plaintiffs' Response in Opposition (doc. 33), and Defendants' Reply (doc. 36). Also before the Court, Defendants' Motion in Limine (doc. 37), Plaintiffs' Response (doc. 41), and Defendants' Reply (doc. 44); Plaintiffs' Motion for Sanctions (doc. 38), Defendants' Response (doc. 39), and Plaintiffs' Reply (doc. 43); as well as Plaintiffs' Motion for Sanctions for Spoliation of Evidence (doc. 42), and Defendants' Response in Opposition (doc. 45).

For the reasons indicated herein, the Court DENIES all of Plaintiffs' motions, GRANTS Defendants' Motion for Summary Judgment, DENIES Defendants' Motion in Limine as moot, and DISMISSES this matter from the Court's docket.

**I.  Background**

The following background is gleaned from the pleadings

and briefing in this matter. Plaintiffs Tyler Young and Django Hendrix, both African-American, operated a retail business "swap shop" in Colerain Township, Ohio, using the business name Ohio Trading Company ("OTC"). Defendants all worked for Colerain Township Police Department: Scott Owens, as a Sergeant; Mark Denney as a Lieutenant; and Joseph Hendricks as a Detective.

When Plaintiffs first opened their business in Colerain Township, in 2009, both the Mason and Fairfield Police Departments called Sergeant Owens to warn him they suspected individuals were stealing televisions for Plaintiff Young to sell at OTC and local flea markets. In May 2010, Defendants determined that OTC purchased a stolen GPS unit, and decided to commence an investigation of OTC.

As part of their investigation, Defendants conducted a surveillance of OTC, that revealed OTC clientele was a "who's who of criminals," including burglars, heroin addicts, and theft suspects, who would sell items regularly to OTC. After nearly a month of such surveillance, Defendants set up a meeting with the Hamilton County Prosecutor's Office to determine the steps to establish controlled sales at OTC. The prosecutor informed them that the totality of the circumstances would have to establish a basis where any prudent person would know an item was stolen, for example if the theft deterrent system on the item was still intact.

Defendants found a confidential informant, Randy Earls,

who they had used in the past, and who informed them that "his understanding from the streets" was that OTC brought stolen goods. Defendants hired Earls to conduct six controlled sales at OTC in summer 2010 with property provided to the police department by Home Depot. All of the property sold to OTC by Earls was unopened in original store packaging, and a tool set was sold with a Home Depot security alarm still attached. Every sale was made for considerably less than retail value: two tool sets valued at $549.00 sold for $150.00 each, a generator valued at $599.00 sold for $150.00, a weed-eater valued at $159.00 sold for $40.00, a push mower valued at $599.99 sold for $100.00, and five more generators valued at $2,995.00 sold for $1,550.00. Earls never received a receipt for any of his sales, but he was asked to produce a driver's license as identification, and asked to sign a "release of purchase" form to certify the items were not stolen. Earls wore a wire and was recorded telling an OTC employee, Joe Kist, the items he was selling were hot, but he never made such statement to either of Plaintiffs. In fact, Plaintiffs contend, Plaintiff Young confronted Earls about the tool set with the alarm attached, and Earl denied it was stolen, repeating that Earls' brother worked at Home Depot so Earls could purchase items wholesale.

    Defendants consulted again with the prosecuting attorney, and made the decision to seek a search warrant for OTC and Plaintiff Young's residence. The search warrants were approved by

the appropriate courts, and the police conducted raids on both OTC and Young's residence. Defendants arrested Plaintiff Young and Joe Kist. Young's landlord, Mark Capodagli, arrived the day of the OTC raid. According to Officer Jennifer Sharp's deposition testimony, Capodagli stated it worked out funny that he showed up the day of the raid because he was there "to cancel their lease any way," which was due to expire at the end of the month (doc. 21). In contrast, in Capodagli's deposition, he stated Sharp consulted with her superiors and instructed him to cancel the lease, as he was there to renew it (doc. 24).

Police confiscated property during the raids. In what Plaintiffs characterize as a "media blitz," the police announced to the public they had seized thousands of items from OTC, and set up pages on the Colerain Township website displaying possibly stolen items. Twenty-three items were eventually claimed by owners as having been stolen.

Following the raid, Defendants issued a criminal complaint against Young, which prosecutors took to a Grand Jury. The Grand Jury issued a five-count indictment against Young, but the charges were ultimately dropped by the prosecutor, who concluded there was insufficient evidence to prove the case beyond a reasonable doubt. The remaining confiscated property was ultimately released back to Young.

Plaintiffs brought this civil action in December 2011,

bringing claims for 1) illegal arrest under the theory that Defendants had no probable cause to support their actions, 2) malicious prosecution, 3) illegal seizure of property, 4) impairment of contracts under the theory that Defendants interfered with the OTC lease agreement with Capodagli, and 5) civil conspiracy under the theory that Defendants conspired to force OTC out of business because Defendants were against African-American businesses in the area (doc. 3). Plaintiffs seek compensatory and punitive damages, costs, and reasonable attorney fees (Id).

Defendants filed their summary judgment in October 2012, contending there is no dispute as to any material fact and they are entitled to judgment as a matter of a law (doc. 26). Defendants essentially contend they had probable cause to support the raid on OTC and Young's arrest, such that the arrest and seizure were proper (Id.). As in their view their actions were reasonable, they contend they are entitled to qualified immunity (Id.). Defendants further contend there are no facts supporting Plaintiffs' claim for malicious prosecution, impairment of contracts, or civil conspiracy (Id.).

Plaintiffs similarly contend they are entitled to summary judgment. They argue Defendants did not have probable cause supporting the arrests and seizures because the property used in the investigation was not stolen and there were no explicit representations at the time of sale that it was stolen (doc. 25).

5

They further contend Capodogli's testimony shows the police conspired to interfere with the OTC lease contract (Id.). Under these circumstances, they claim they should prevail against Defendants (Id.).

In addition to the dispositive motions, Defendants filed a motion in limine regarding evidence related to damages (doc. 37), and Plaintiffs filed a motion for sanctions (doc. 38) under the theory that Defendants have misrepresented the law in their briefings. Plaintiffs further have filed a motion regarding alleged spoliation of evidence, contending Defendants confiscated business documents during the raid which were never returned to Plaintiffs but rather, were destroyed (doc. 42).

These various matters are ripe for the Court's consideration. The Court will commence with the dispositive motions.

**II. The Parties' Cross Motions for Summary Judgment**

**A. Applicable Legal Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962);

6

LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir.

7

1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**B. Discussion**

Having reviewed this matter, the Court finds no question that Defendants' actions in seizing Plaintiffs' property and in arresting Plaintiff Young were supported by probable cause that Young and OTC were engaged in the business of receiving stolen property. A police officer is permitted to make an arrest when there is probable cause that an individual committed a crime. "A finding of probable cause does not require an actual showing of criminal activity, but rather 'requires' only a probability or substantial chance of criminal activity." United States v. Harris, 255 F.3d 288, at 292 (6th Cir. 2001). Probable cause is defined by asking "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Here the officers knew that a stolen GPS had turned up at OTC, they had been warned by two other jurisdictions that Plaintiff Young was suspected of selling stolen televisions at OTC and local flea markets, their surveillance showed a host of suspect characters selling items at the store, and they knew from their own informant that "word on the street" was that OTC bought stolen goods. These facts and circumstances gave rise to probable cause the OTC received stolen property, even independent of any alleged

10

deficiencies with the controlled sales of goods.

Moreover, "[i]t has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006). Here there is no factual dispute that the Grand Jury returned a five-count indictment against Young for receiving stolen property. As such, there was probable cause, as a matter of law, supporting Young's arrest and the seizure of his property. Having so concluded, the Court finds Defendants' motion well-taken as to Plaintiffs' claims for illegal arrest and illegal seizure of property. Such claims lack merit as a matter of law and are dismissed.

Similarly, a malicious prosecution claim fails when there was probable cause to prosecute, as there was here. Fox v. DeSoto, 489 F.3d 227, 237 (6th Cir. 2007). The Court grants Defendants' motion as to Plaintiffs' claim for malicious prosecution, which is dismissed.

Defendants are further entitled to summary judgment as to Plaintiffs' claims that Defendants interfered with Young's contract rights, that is, his lease with Capodagli. Even taking the evidence in the light most favorable to Plaintiffs, that is, accepting as true Capodagli's testimony that Officer Sharp told him to not renew the lease, such claim fails. There is no evidence

11

that any of the named Defendants told Capodagli to not renew the lease.  The evidence shows Defendant Denney was not present at OTC during the raid, and that Defendants Owen and Hendricks do not even know who Capodagli is.  Furthermore, there is no evidence in the record showing racial animus on the part of any of the Defendants. Amini v. Oberlin College, 440 F.3d 350, 358 (6th Cir. 2006).  The evidence does not establish that Defendants did anything other than to take legitimate action based on probable cause that Plaintiffs were engaging in receiving stolen property.

Finally, for essentially the same reasons, Plaintiffs' claim fails that Defendants engaged in a conspiracy to interfere with Plaintiffs' civil rights.  There simply is no record evidence to support a conspiracy claim.  Plaintiffs' claims are vague and conclusory.  In any event, Defendants' arguments are unopposed that a civil conspiracy claim brought pursuant to 42 U.S.C. § 1985(a) cannot be based on a deprivation rights guaranteed by 42 U.S.C. § 1981(a), (doc. 36, citing Stewart v. Commercial Vehicles of South Florida, Inc., 366 Fed. Appx. 41, 42 (11th Cir. 2010), and that the intra-corporate conspiracy doctrine bars such claim (Id. citing Brunson v. City of Dayton, 163 F.Supp.2d 919, 927 (S.D. Ohio 2001).  The Court grants summary judgment to Defendants as to such claim as well.

The Court's review of the parties' cross-motions also leads it to conclude that Defendant officers are each entitled to

12

qualified immunity, as their actions were reasonable, did not violate any constitutional rights, and were premised on probable cause. Saucier v. Katz, 533 U.S. 194, 202 (2001). To the extent Plaintiffs claim Defendants acted in their official capacities, there is no evidence of a custom or policy on the part of Colerain Township that violated Plaintiffs' rights. Miller v. Sanilac County, 606 F.3d 240, 254-55 (6th Cir. 2010).

### III. The Remaining Motions

As the Court has found Plaintiffs' Motion for Summary Judgment lacking in merit and has concluded Defendants are entitled to summary judgment, it is unnecessary to reach the remaining motion in limine and the motions for sanctions. For the sake of clarity, in any event, the Court normally would not reach a liminal motion until the time of trial. However, the Court has reviewed the motions for sanctions and finds them lacking in merit. There is no basis to sanction Defendants here for misrepresentations of the law, and no factual basis for Plaintiffs' claims regarding spoliation of evidence.

### IV. Conclusion

The Court understands Plaintiffs' view in this case: they were subjected to arrests, their property was confiscated. The charges were ultimately dropped against them, but they nonetheless lost their business. In their view, there was no more evidence they engaged in receiving stolen property than any other pawn shop in the

13

Township.  In Plaintiffs' view Defendants made a public spectacle with overblown statements to the media that "thousands of items were seized," and "drug users knew if they stole something, this was the place to bring it."

However, a review of the record demonstrates the Defendants in this case had a reasonable basis to support the arrests and the seizure of property.  Even though the prosecutor ultimately dismissed the charges, such charges were based on probable cause.  Ultimately the record shows a number of stolen items were recovered from Plaintiffs' confiscated inventory, even if they did not amount to thousands of items.  Even if this were not the case, however, and nothing had been recovered, the law accepts the risk that in some cases officers may arrest the innocent. Illinois v. Wardlow, 528 U.S. 119, 126 (2000).  So long as the arrest or seizure is based on probable cause, it passes muster.

Finally there is no evidence Defendants interfered with the OTC lease, and no record evidence that they engaged in a civil conspiracy.  The Court sees no basis here for a claim that Plaintiffs' business was singled out by virtue that it was operated by African-Americans.

Accordingly, for the reasons indicated herein, the Court GRANTS Defendants' Motion for Summary Judgment (doc. 26), DENIES Plaintiffs' Motion for Summary Judgment (doc. 25), DENIES Plaintiffs' Motion for Sanctions (doc. 38), and DENIES Plaintiffs'

14

Motion for Sanctions for Spoliation of Evidence (doc. 42). The Court further DENIES Defendants' Motion in Limine (doc. 37) as moot. This matter is DISMISSED from the Court's docket.

    SO ORDERED.


Dated: May 7, 2013                  <u>s/S. Arthur Spiegel</u>
                                      S. Arthur Spiegel
                                        United States Senior District Judge